Filed 8/27/24  P. v. Renteria CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>FIDEL RENTERIA,<br><br>        Defendant and Appellant. | B330954<br><br>(Los Angeles County<br>Super. Ct. No. PA089104) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2019, defendant Fidel Renteria pleaded no contest to a count of attempted murder and admitted he personally and intentionally discharged a firearm in the commission of that offense.  In 2022, he filed a petition for resentencing under Penal Code[1] section 1172.6, a statute which authorizes relief for, among others, persons convicted of attempted murder under the natural and probable consequences doctrine.  After appointing counsel for Renteria, allowing both sides to file briefing, and holding a hearing to determine if Renteria made a prima facie showing for relief, the trial court denied the petition without issuing an order to show cause and holding an evidentiary hearing.  The court concluded the record of conviction, including a limited review of evidence presented at Renteria's preliminary hearing, establishes as a matter of law that Renteria is ineligible for resentencing because he is the person who fired the gunshots at the victims.

Renteria challenges the trial court's denial of his resentencing petition at the prima facie stage, arguing that the court engaged in impermissible fact finding in considering preliminary hearing testimony and that the record of his conviction does not otherwise demonstrate he is ineligible for relief as a matter of law.  We conclude there was no error.  Surveillance video of the shooting was admitted at the preliminary hearing.  Testimony presented in conjunction with the video establishes there was only one shooter.  No other person was charged with being involved in the shooting when Renteria admitted at his plea hearing that he personally and intentionally discharged a firearm during commission of the attempted murder.  We can conceive of no scenario based on

---

[1] Undesignated statutory references are to the Penal Code.

these undisputed facts in which Renteria could have been prosecuted under the natural and probable consequences doctrine, and he has posited none.

## BACKGROUND

Renteria did not include the reporter's transcripts from his preliminary hearing in the appellate record, although his contention in this appeal is that the trial court erred in relying on these transcripts in denying his resentencing petition at the prima facie stage. On this court's own motion, we augmented the appellate record with the reporter's transcripts from the preliminary hearing and minute orders related to the preliminary hearing.[2]

### A. Preliminary Hearing

On July 2, 2018, the preliminary hearing commenced to determine whether Renteria and codefendant Jorge Olea would be held to answer on a charge of premeditated attempted murder. The two-day preliminary hearing concluded on July 26, 2018.

Angel Vargas, a victim of the alleged attempted murder, testified for the prosecution at the preliminary hearing and was cross-examined by each defendant's counsel. During Vargas's testimony, the prosecutor played surveillance video from the gas

---

[2] Our consideration of the preliminary hearing transcripts is limited. We provide a summary of the evidence presented at the preliminary hearing, but we do not weigh the evidence. We rely on indisputable circumstances about the shooting presented at the preliminary hearing, as specified below, but we make no finding that all of the facts set forth in our summary of the evidence are true. We provide the summary to give context to Renteria's no contest plea and admissions as well as the arguments he raised below and on appeal in support of his petition for resentencing.

3

station where the incident occurred. The video was admitted into evidence at the preliminary hearing. Vargas testified about the shooting as he watched the surveillance video which captured the shooting.

Vargas testified that on June 21, 2017, between 8:00 and 9:00 p.m., he and his brother were sitting in a car parked at a gas station next to a gas pump. He was in the driver seat and his brother was in the front passenger seat. Vargas observed three men enter and then exit the gas station's convenience store. Vargas stated that as shown on the surveillance video, one of the three men approached the driver side of the car where Vargas was seated. In a six-pack photo lineup and in court at the preliminary hearing, Vargas identified the man as Renteria. Through the open driver side window of Vargas's car, Renteria asked Vargas, " 'Do you know me?' " Vargas responded, " 'Do you know me?' " Renteria indicated he had mistaken Vargas for someone else.

Vargas stated that he turned his head and noticed that one of the other two men who had entered and exited the convenience store with Renteria was standing behind his (Vargas's) car, off to the side, holding onto the door to the store. The man made a motion with his other hand that Vargas interpreted as a gang sign. Vargas identified this man in court at the preliminary hearing as codefendant Olea, both by pointing him out in court and identifying him in a still photograph taken from the surveillance video. Vargas testified that he asked, " 'What's that,' " referring to the hand sign from Olea, and Renteria responded, " 'San Fer,' " which Vargas understood to be a reference to a gang. According to Vargas, the third man (who was not charged in this

4

case) was standing behind Renteria around three or four feet away from Vargas's car, looking at Vargas.

Vargas stated that as shown on the surveillance video, Renteria walked to the driver side of a vehicle parked behind Vargas's car. Then, Vargas looked in his rearview mirror and saw Renteria standing behind the trunk of his (Vargas's) car. As Vargas started to drive away, he heard a gunshot. He saw Renteria pointing a gun at his car.[3] Renteria fired multiple shots into Vargas's car as Vargas drove out of the gas station. The rear window shattered and a bullet lodged in the headrest of the driver seat where Vargas was sitting. There were three bullet holes in Vargas's car that were not there before this incident. Vargas testified that the lone shooter shown on the surveillance video was Renteria.

Los Angeles Police Department Officer Samantha Barnhart, who was assigned to a gang enforcement detail and took part in the investigation of this case, also testified at the preliminary hearing. Barnhart stated that she and her partner detained Olea on June 26, 2017, and thereafter Olea told a detective (outside her presence) that he was present at the gas station on June 21, 2017 with Renteria and a man called Flaco, but he (Olea) did not fire a gun. According to Barnhart's testimony, Olea also told the detective he "had a suspicion" that Renteria was the shooter, but he indicated he did not see who fired the shots; and he covered his face before entering Renteria's

---

[3] Earlier in his testimony, before making this clarification, Vargas indicated he did not see a gun in Renteria's hand "prior to pulling away from the gas station."

5

truck after the shooting because he did not want to get in trouble for a shooting he did not commit.[4]

Officer Barnhart also testified about Renteria's and Olea's affiliation with the San Fernando criminal street gang and stated her opinion that a hypothetical shooting mirroring the facts of this case would have been committed for the benefit of and in association with the gang, with the specific intent to promote criminal conduct by gang members.

After the witnesses testified, Renteria's counsel argued there was insufficient evidence that the attempted murder was premeditated. Renteria's counsel otherwise submitted on the charge and enhancements. The trial court rejected this argument and held Renteria to answer on a charge of willful, deliberate, and premeditated attempted murder, with a firearm enhancement allegation under section 12022.53, subdivision (c) (personal and intentional discharge of a firearm), and a gang enhancement allegation under section 186.22, subdivision (b). The court commented the evidence showed that "after making contact with the victims, [Renteria] walked back to his vehicle and retrieved the firearm and fired three shots."

Olea's counsel made a motion to dismiss the attempted murder charge as to Olea. The trial court asked the prosecutor to cite evidence showing Olea aided and abetted an attempted murder. After hearing from the prosecutor and then Olea's counsel on this issue, the court granted the motion to dismiss the

---

[4] We do not rely on any statements by Olea in deciding this appeal, and there is no indication the trial court did either. We include Officer Barnhart's testimony about Olea's statements because Renteria references them in his reply brief in support of his petition for resentencing, as set forth below.

6

attempted murder charge as to Olea, finding Olea "is more of a witness than a suspect." The court held Olea to answer on a charge of accessory after the fact (with a gang enhancement allegation), based on evidence presented at the preliminary hearing that is not germane to this appeal.

On August 9, 2018, the district attorney filed an information charging Renteria and Olea with the above-described offenses and enhancements.[5]

## B. No Contest Plea and Admission of Enhancement Allegations

We granted Renteria's motion to augment the record in this appeal with the reporter's transcript of his plea hearing, held on May 23, 2019. On that date, Renteria waived his constitutional rights, withdrew his not guilty plea, and pleaded no contest to the charge of attempted murder. He admitted the allegation that in the commission of the attempted murder he personally and intentionally discharged a firearm, within the meaning of section 12022.53, subdivision (c). He also admitted the allegation that he committed the attempted murder for the benefit of, at the direction of, and in association with a criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by gang members, within the meaning of section 186.22, subdivision (b)(1)(C). His plea deal did not require him to admit the allegation that the attempted murder was willful, deliberate, and premeditated. Renteria's counsel indicated that he "join[ed] in the waivers, and stipulate[d] to a factual basis based on the complaint and police reports and concur[red] in the plea and the

---

[5] Renteria was charged with one count of attempted murder which listed both Vargas and his brother as the victims in the same count.

7

admissions" pursuant to *People v. West* (1970) 3 Cal.3d 595. The trial court accepted the plea and the admissions.

Under the terms of the plea negotiation, the trial court sentenced Renteria to 27 years in state prison: the middle term of seven years for the attempted murder, plus 20 years for the firearm enhancement. The court struck the gang enhancement allegation for purposes of punishment.

## C.  Petition for Resentencing

In 2018, the Legislature enacted Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.); Stats. 2018, ch. 1015, § 1(f), p. 6674; §§ 188, subd. (a)(3) & 189, subd. (e).) Senate Bill No. 1437 amended sections 188 (defining malice) and 189 (felony murder) and added section 1170.95, now renumbered section 1172.6,[6] which established a procedure for vacating murder convictions and resentencing defendants who could no longer be convicted of murder in light of the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)[7] On October 5, 2021, the Governor signed

---

[6] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

[7] Senate Bill No. 1437 added the following provision to section 188: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

8

into law Senate Bill No. 775 which amended then-section 1170.95 to, among other things, authorize relief for persons convicted of attempted murder under the natural and probable consequences doctrine. (Sen. Bill No. 775 (2020-2021 Reg. Sess.); Stats. 2021, ch. 551, § 2.) The amendment became effective January 1, 2022.

On November 30, 2022, Renteria, as a self-represented litigant, filed a petition for resentencing using a pre-printed form. He checked boxes on the form indicating (1) an information was filed against him that allowed the prosecution to proceed under a theory of attempted murder under the natural and probable consequences doctrine; (2) he accepted a plea offer in lieu of a trial at which he could have been convicted of attempted murder; and (3) he could not presently be convicted of attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. He also checked the box requesting appointment of counsel.

The trial court appointed counsel for Renteria and set a briefing schedule. The district attorney filed a brief opposing the resentencing petition, arguing Renteria is ineligible for resentencing as a matter of law because he was convicted of attempted murder as the sole shooter and not under a natural and probable consequences theory. The district attorney set forth a statement of facts in the brief, presumably taken from the transcripts of the preliminary hearing. The district attorney noted in the brief that Olea made statements to law enforcement about the incident, and that he was not held to answer on the attempted murder charge due to insufficient evidence he aided and abetted Renteria in the attempted murder.

In a reply brief filed by his counsel, Renteria relied on the allegations in his pre-printed, form petition to support his

9

contention that he made a prima facie case for relief and the trial court must issue an order to show cause and set the matter for an evidentiary hearing. He argued the court could not rely on "facts from [his] preliminary hearing" to deny his petition at the prima facie stage because the court may not engage in fact finding at this stage. He did not describe the circumstances of the shooting, other than to state the district attorney "conceded" in the opposition brief that there were other men present with him at the crime scene (a fact presumably taken from the preliminary hearing transcript). He also noted the district attorney pointed out in the opposition brief that Olea was not held to answer on the attempted murder charge, and he asserted that the "prosecution should not be permitted to rely on a self-serving statement by a codefendant in order to deprive Mr. Renteria of an Order to Show Cause hearing." Apparently, he was referring to Olea's statement that he did not see who fired the shots but he suspected it was Renteria (although the district attorney did not reference this specific statement in the opposition brief). Finally, Renteria argued, "personal use of a firearm, standing alone, is not enough to impute the necessary intent to kill, under current law, which requires the fact finder to determine that petitioner personally harbored intent to kill." The reply brief did not offer any argument grounded in the facts of record that would support an inference that Renteria was facing prosecution for the attempted murder on a natural and probable consequences theory when he was convicted based on his plea.

On May 22, 2023, the trial court held a hearing under section 1172.6, subdivision (c), to determine whether Renteria made a prima facie case for relief. The court acknowledged that it could not engage in fact finding at the prima facie stage, and

10

stated that it could consider the record of conviction, "including testimony at a preliminary hearing, as long as it's not hearsay testimony." The court concluded Vargas's testimony at the preliminary hearing that Renteria was the shooter, and Renteria's admission at his plea hearing that he personally and intentionally discharged a firearm in the commission of the attempted murder, established as a matter of law that Renteria was ineligible for resentencing. The court asked if either party wanted to present oral argument, and both declined. The court denied Renteria's resentencing petition without issuing an order to show cause and holding an evidentiary hearing.

## DISCUSSION

Renteria contends the trial court erred in denying his petition for resentencing at the prima facie stage, arguing the record of conviction does not establish he was the "actual perpetrator" of an attempted murder, and reliance on the preliminary hearing transcripts to conclude that he was constitutes impermissible fact finding.

### A. Section 1172.6 and the Prima Facie Inquiry

As stated in section 1172.6, subdivision (a), a person convicted of attempted murder under the natural and probable consequences doctrine may file a petition to have the attempted murder conviction vacated and to be resentenced on any remaining counts. When a defendant files a facially sufficient petition under section 1172.6, subdivision (b), by completely filling out the pre-printed form petition and checking all required boxes, the trial court must appoint counsel to represent the petitioner, allow briefing from both sides, and hold a hearing to determine whether the petitioner has made a prima facie showing for relief. (§ 1172.6, subds. (b)-(c).) If the petitioner

11

makes such a showing, the court must issue an order to show cause and hold an evidentiary hearing, unless the parties stipulate that the petitioner is entitled to relief. (§ 1172.6, subds. (c)-(d)(2).) At the evidentiary hearing, the prosecution has the burden of "prov[ing], beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

As the California Supreme Court explained in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*):

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder [and attempted murder] culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process. [Citation.]

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without

12

first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra,* 11 Cal.5th at p. 971.)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra,* 11 Cal.5th at p. 972.) The " 'prima facie bar was intentionally and correctly set very low.' " (*Ibid*.) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under section [1172.6], subdivision (c)." (*Ibid*., fn. omitted.)

"Whether the court conducted a proper inquiry under section [1172.6], subdivision (c)" at the prima facie stage—the issue before us—is a question we review de novo. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437; *People v. Harden* (2022) 81 Cal.App.5th 45, 52 ["We independently review a trial court's determination on whether a petitioner has made a prima facie showing"].)

B.  **Conflicting Case Law Regarding Reliance on a Preliminary Hearing Transcript at the Prima Facie Stage of a Section 1172.6 Petition**

There is a split of authority among California Courts of Appeal on the issue of the extent to which a trial court may rely on a preliminary hearing transcript in denying a section 1172.6 petition for resentencing at the prima facie stage in a case in which the defendant pleaded guilty or no contest to murder, attempted murder, or manslaughter. But even courts that

13

disagree on the extent to which a preliminary hearing transcript may be considered agree that the preliminary hearing transcript is part of the record of conviction.  (See, e.g., *People v. Williams* (2024) 103 Cal.App.5th 375, ___ [322 Cal.Rptr.3d 728, 749] (*Williams*); *People v. Pickett* (2023) 93 Cal.App.5th 982, 988, 992-993, review granted Oct. 11, 2023, S281643 (*Pickett*).)

Some appellate courts, including this one, have concluded there are circumstances when consideration of the preliminary hearing transcript at the prima facie stage of a section 1172.6 petition does not constitute impermissible factfinding.  (See, e.g., *Pickett*, *supra*, 93 Cal.App.5th at p. 990 [we held that, "where the defendant alleges no facts concerning the murder to which he pleaded guilty, the People introduce without objection uncontroverted evidence from the preliminary hearing transcript showing that the defendant acted alone in killing the victim, and the defendant does not put forth, by way of briefing or oral argument, any factual or legal theory in support of his petition, the defendant has failed to make a prima facie showing for relief under section 1172.6"]; *People v. Mares* (2024) 99 Cal.App.5th 1158, 1175, review granted May 1, 2024, S284232 (*Mares*) [holding that the trial court did not err in considering the preliminary hearing transcript where the undisputed evidence established the defendant was the actual killer, the record "contain[ed] no indication of the involvement of any other person in the killing or in the physical fight," and the defendant "never explained, in the trial court or on appeal, how he could have been convicted as an accomplice"]; *People v. Patton* (2023) 89 Cal.App.5th 649, 657, 658, review granted June 28, 2023, S279670 [holding that the trial court did not engage in fact finding when it relied on the preliminary hearing transcript in

14

denying a section 1172.6 petition, where the "sworn testimony of police officers, based on surveillance video of the crime, that [the defendant] committed the shooting was and is uncontroverted," and the defendant "never offered any theory to support his implicit contention now that he was an accomplice and not the person who actually shot [the attempted murder victim]"].)

Other appellate courts have concluded that consideration of the preliminary hearing transcript at the prima facie stage of a section 1172.6 petition, in the manner described above in *Patton*, *Pickett*, and *Mares*, contravenes the bar on fact finding at this stage. (See, e.g., *Williams*, *supra*, 103 Cal.App.5th 375, ___ [322 Cal.Rptr.3d at pp. 734, 747, 752] [holding that the trial court erred in relying on the preliminary hearing and change of plea transcripts in denying the defendant's facially sufficient section 1172.6 petition at the prima facie stage, and concluding that "absent a factual finding or admission regarding the manner in which the offense was committed, even compelling, uncontroverted, and uncontradicted testimony is not *conclusive* of a petitioner's guilt under a specific theory, as required under *Curiel*"[8] and "neither the preliminary hearing transcript nor

_____

8 In *People v. Curiel* (2023) 15 Cal.5th 433, the California Supreme Court held, "a petitioner who alleges that he or she could not currently be convicted of a homicide offense 'because of changes to Section 188 or 189 made effective January 1, 2019' (§ 1172.6, subd. (a)(3)) puts at issue all elements of the offense under a valid theory." (*Curiel*, at p. 462.) The allegation "is not refuted by the record unless the record conclusively establishes every element of the offense." (*Id*. at p. 463.) *Curiel* involved the "effect of [a] jury's true finding on [a] gang-murder special circumstance" on the defendant's "ability to state a prima facie case for relief." (*Id*. at pp. 440-441.) While relying on *Curiel* and

15

defense counsel's stipulation to that transcript providing a factual basis for the plea conclusively establishes that petitioner entered a plea to attempted murder under a still-valid theory"].)

A more detailed discussion of the cases on both sides of the issue is not necessary here. For reasons we discuss in the next section of this opinion, we are satisfied that Renteria is ineligible for resentencing as a matter of law based on the record of his conviction, which includes a limited review of the key indisputable circumstances of the shooting revealed in the preliminary hearing transcripts.

## C.    Analysis

Renteria does not acknowledge in his appellate briefing that surveillance video was admitted into evidence at his preliminary hearing (although the Attorney General references the video in the respondent's brief). Undisputed evidence presented at the preliminary hearing establishes that the

---

applying its rationale, the majority in *Williams* "acknowledge[d] the [California Supreme Court] has yet to elaborate on how the record of conviction may conclusively establish every element of the offense under a valid theory in the context of a plea." (*Williams, supra*, 103 Cal.App.5th 375, ___ [322 Cal.Rptr.3d at p. 746].) The dissent in *Williams* reasoned that "in plea cases where no factual dispute over whether the conviction was based on an invalid theory is apparent from the record because the record instead reflects petitioner was the direct perpetrator acting alone, and petitioner has done nothing beyond filing a form petition to identify a basis for relief under section 1172.6, the utility of applying a test that asks whether every element of the offense has been conclusively established by the record under a valid theory is not clear." (*Id*. at p. 768 (dis. opn. of Meehan, J).) We agree with the dissent's reasoning and decline to follow *Williams* on this point.

shooting involving Vargas and his brother was captured on that surveillance video, and the video shows there was one shooter.[9] Considering this undisputed evidence does not involve " 'weighing of evidence' " or " 'exercise of discretion' " and thus does not constitute " 'factfinding' " as proscribed by *Lewis*. (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

Renteria admitted at the plea hearing that he personally and intentionally discharged a firearm in the commission of the attempted murder of Vargas and his brother. In some cases, where there are multiple shooters, the admission of such a firearm enhancement may not inform the prima facie inquiry because one shooter may have harbored intent to kill, while another may have aided and abetted some other offense without intent to kill, and the natural and probable consequences of the other offense were murder or attempted murder. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 599.) Here, in contrast, there was only one shooter—Renteria—and there is no conceivable theory under which he, the direct perpetrator, could have been prosecuted under an aiding and abetting theory under the natural and probable consequences doctrine. And he posits no such theory.[10]

---

[9] At oral argument, Renteria's counsel acknowledged there is surveillance video of the incident, and counsel did not dispute that the video shows only one shooter.

[10] Whether or not the record of conviction establishes Renteria acted with intent to kill is not material here where the record of conviction establishes he was the direct and sole perpetrator of the offense. Even if he could prove he did not act with intent to kill, that would not entitle him to relief under section 1172.6 because his attempted murder conviction is not affected by the change in law, i.e., the elimination of the natural

The intimation in the reply brief filed below that there were others present with Renteria at the gas station where the shooting occurred, falls far short of a coherent articulation of a basis for concluding that Renteria could have been prosecuted for attempted murder on a natural and probable consequences theory.[11] We note that in this appeal Renteria makes no mention that others were present with him at the gas station. He does not reference any case-specific facts at all.

As the dissent cogently stated in *Williams*, "Courts must take care not to demand too much of the petitioner at the prima facie stage, but they must also not demand so little that the prima facie review is rendered meaningless and direct perpetrator cases with uncontroverted records of conviction move to the next stage based on nothing more than a form petition with the requisite boxes checked. If, under the circumstances in this case, filing a form petition with boxes checked is sufficient to justify an evidentiary hearing, the prima facie review stage is rendered hollow, our high court's express endorsement of limited record review and dismissal of petitions where the record refutes the petition allegations is not given effect, clearly meritless petitions will proceed to an evidentiary hearing, and already

---

and probable consequences doctrine as a basis for attempted murder liability. He could have challenged the sufficiency of the evidence of intent to kill "at the time of his plea, without any change in the law." (*Mares, supra*, 99 Cal.App.5th at p. 1168.)

[11] The only aiding and abetting theory mentioned in the record of conviction is whether Olea aided and abetted Renteria in the attempted murder. The trial court expressly rejected this theory at the preliminary hearing and declined to hold Olea to answer for attempted murder.

18

swamped trial courts will be needlessly burdened by conducting evidentiary hearings on meritless petitions." (*Williams*, *supra*, 103 Cal.App.5th at p. ___ [322 Cal.Rptr.3d at pp. 769-770] (dis. opn. of Meehan, J).)

Renteria contends he is entitled to an evidentiary hearing based on the bare allegations in the form petition for resentencing. He offers no factual context for these standard, pre-printed allegations. He urged this court not to look at the transcripts of his preliminary hearing, which he did not include in the appellate record. But we have conducted an appropriately limited review of these transcripts, as necessary to resolve the arguments he raises on appeal and to gain context for his no contest plea and admissions. As explained above, without engaging in any weighing of the evidence, we agree with the trial court's conclusion that Renteria has not made a prima facie showing for relief. The record of conviction " ' "contain[s] facts refuting the allegations made in the petition," ' " and the trial " ' "court [was] justified in making a credibility determination adverse to [Renteria]." ' " (See *Lewis*, *supra,* 11 Cal.5th at p. 971.) The petition was properly denied.[12]

---

[12] Because we conclude Renteria did not make a prima facie showing for relief, we reject his contentions that the denial of his petition without an order to show cause and an evidentiary hearing violated his due process rights under the federal and California constitutions.

## DISPOSITION

The May 22, 2023 order denying the petition for resentencing is affirmed.

NOT TO BE PUBLISHED

KELLEY, J.*

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.